NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLESWORTH LEWIS,  Plaintiff, v. PENNYMAC CORP., et al.  Defendants. | Civil Action No.: 16-1514 (JLL) (JAD)  **OPINION** |

**LINARES**, District Judge.

This matter is before the Court *sua sponte* to address the issue of subject matter jurisdiction. For the reasons below, the Court concludes that it lacks subject matter jurisdiction over Pro-Se Plaintiff Charlesworth Lewis's Complaint (ECF No. 1) pursuant to the *Rooker–Feldman* doctrine. To the extent that Plaintiff's claims are not barred by *Rooker–Feldman*, the Court finds that they are barred by the entire controversy doctrine.

### BACKGROUND

Plaintiff commenced this action on March 17, 2016. (ECF No. 1 ("Compl.").) On April 18, 2016, Defendants Penny Mac Corp. ("PennyMac"), Lauren E. O'Donnell, Esq., and Kevin C. Rakowski, Esq. (collectively "Defendants") filed a joint motion to dismiss Plaintiff's Complaint. (ECF No. 3.)[1]

---

[1] The motion to dismiss included an affidavit of Michael P. Trainor, Esq. (ECF No. 3-3 ("Trainor Aff.") and accompanying exhibits.)

On November 16, 1989, Plaintiff executed a mortgage in favor of Citicorp Mortgage, Inc. (the "Mortgage"). (*See* Compl. ¶¶ 22-26.) The Mortgage was subsequently assigned to PennyMac (the "PennyMac Assignment"). (*Id.*)

After Plaintiff defaulted on the Mortgage, PennyMac filed a foreclosure action (the "Foreclosure Action") in New Jersey Superior Court. (*Id.*) Plaintiff failed to appear in the Foreclosure Action and final judgment by default was entered on October 31, 2014 (the "Default Judgment"). (*See* Trainor Aff., Exs. A and B.)

On February 12, 2015, Plaintiff filed a Motion to Vacate the Default Judgment ("Motion to Vacate"), in which he argued in part that Penny Mac lacked standing because the note, mortgage, and assignments of mortgage were fraudulent and invalid, and that PennyMac's attorney allegedly committed acts of "misrepresentation and misconduct." (*See id.*, Ex. C.) On April 10, 2015, the court held oral argument on the Motion to Vacate (*id.*, Ex. D) and entered an Order denying Plaintiffs Motion to Vacate and ordering that the previously entered final judgment in foreclosure remain in effect (the "April 10, 2015 Order") (*id.*, Ex. E.)

On May 8, 2015, Plaintiff appealed the April 10, 2015 Order to the Superior Court of New Jersey Appellate Division. (*Id.*, Ex. G.)[2] The matter remains pending before the Appellate Division.

On May 28, 2015, Plaintiff filed a complaint against PennyMac in the Chancery Division of the Superior Court of New Jersey, Essex County (the "Chancery Action"), in which he also alleged that Penny Mac lacked standing because the note, mortgage, and assignments of mortgage were fraudulent and invalid, and sought a declaration that the assignment to PennyMac was void.

---

[2] On June 2, 2015, Plaintiff filed a Motion Stay Pending Appeal, which was subsequently denied as moot, after the Sheriff's Sale occurred on June 9, 2015. (*Id.*, Ex. F.)

(*Id.*, Ex. H.) On July 2, 2015, PennyMac filed a motion to dismiss the Chancery Action with prejudice (*id.*, Ex. I), which Plaintiff opposed (*id.*, Ex. J). On August 21, 2015, the Chancery Court granted PennyMac's motion and dismissed the Chancery Action with prejudice. (*Id.*, Ex. K.)

Plaintiff then commenced this federal action on March 17, 2016, alleging violation of the Fair Debt Collection Practices Act ("FDCPA") (Count 1), a RICO conspiracy (Count 2), violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count 3), and civil conspiracy (Count 4). (*See* Compl.) A review of the docket reveals that Plaintiff has not yet served the Complaint on Defendants. Nevertheless, Defendants filed a joint motion to dismiss on April 18, 2016. (ECF No. 3.) On May 4, 2016, Plaintiff filed a "Motion to Show Bona Fides & Authority to Represent the Defendants" (ECF No. 5), arguing in part that the motion to dismiss was improper since Defendants had not yet been served the Complaint. (*See* ECF No. 5-1.) On May 9, 2016, Plaintiff filed opposition to the motion to dismiss, once again arguing in part that the motion was improper due to lack of service. (ECF No. 6.) On May 11, 2016, Defendants filed a reply in further support of the motion to dismiss. (ECF No. 7.)

In light of the foregoing, the Court now *sua sponte* raises the issue of subject matter jurisdiction.

## **LEGAL STANDARD**

Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Ridge*, 150 F.3d

3

at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  The burden of demonstrating the existence of federal jurisdiction is on the party seeking to invoke it.  *See Common Cause of Pa.. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

Courts must *sua sponte* raise issue of subject matter jurisdiction whenever its existence is in question.  *Shaffer v. GTE N., Inc.*, 284 F.3d 500, 502 (3d Cir. 2002) (citation omitted).  "[A] court may consider evidence beyond the pleadings such as testimony and depositions when considering a jurisdictional challenge."  *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (citation omitted).  Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

## ANALYSIS

### A.  Plaintiff's Complaint is Barred in Large Part by the *Rooker–Feldman* Doctrine

To the extent Plaintiff seeks to have the Foreclosure Action overturned, the *Rooker–Feldman* doctrine strips this Court of jurisdiction,

The *Rooker-Feldman* doctrine bars federal jurisdiction in cases "that are essentially appeals from state-court judgments."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  Put another way, a suit in federal court is barred under the *Rooker–Feldman* doctrine where "a favorable decision in federal court would require negating or reversing the state-court decision."  *Id.* at 170 n.4 (citations omitted). The Third Circuit has explicitly held that federal courts are barred by the *Rooker-Feldman* doctrine from providing relief that would overturn a state court foreclosure decision. *See, e.g.*, *Gage v. Wells Fargo Bank, NA AS*, 521 F.

App'x 49, 51 (3d Cir. 2013); *Manu v. Nat'l City Bank of Indiana*, 471 F. App'x 101, 105 (3d Cir. 2012); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152 (3d Cir. 2008); *Ayres–Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005).

In order for the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim" and they are "closely related." *Id.* at 166, 168.

The first and third prongs are clearly met in the instant action: Plaintiff lost in the Foreclosure Action (*see* Trainor Aff., Ex. E) and that judgment was rendered prior to Plaintiff's filing of the instant action in this Court.

The second and fourth prongs are also satisfied here. Based upon similar factual circumstances, the Third Circuit held in *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49 (3d Cir. 2013) that the second and fourth prongs were met and that *Rooker–Feldman* barred jurisdiction. Similar to the Plaintiff here, "Gage defaulted on his mortgage, and Wells Fargo subsequently filed a foreclosure complaint in state court" which ultimately ruled in Wells Fargo's favor. *Id.* at 50. Gage filed a complaint in federal court challenging the foreclosure judgment and sheriff's sale. *Id.* The district court subsequently granted Wells Fargo's motion to dismiss and

5

held that the claims were barred under the *Rooker–Feldman* doctrine. *Id.* In affirming, the Third Circuit held that all four prongs of the *Rooker–Feldman* test were satisfied and stated that:

> Gage cannot evade *Rooker–Feldman* by arguing on appeal that he was not injured by the foreclosure judgment, but rather by Wells Fargo's purportedly fraudulent actions. The complaint reveals the nature of Gage's claims against Wells Fargo: that the bank had no right to foreclose on the property and therefore committed "criminal acts" by enforcing the foreclosure judgment (Counts I and IV). These claims are in essence an attack on the state court judgment of foreclosure. Furthermore, an aspect of the relief that Gage requests—to have the deed to the property restored to him—makes it abundantly clear that he seeks to overturn the foreclosure judgment. Accordingly, the claims against Wells Fargo were properly dismissed under the *Rooker–Feldman* doctrine.

*Id.* at 51.

For the same reasons, the Court finds that the second and fourth requirements are met here and that *Rooker–Feldman* strips this Court of jurisdiction to the extent that Plaintiff asks this Court to overturn the Foreclosure Action judgment. The gravamen of Plaintiff's Complaint is that Defendants had no right or standing to foreclose on the Property. (*See* Compl.) Plaintiff seeks a declaration from this Court that the assignment of the mortgage to PennyMac was void. (*Id.* at 28.) Thus, to the extent that Plaintiff asks this Court to overturn the Foreclosure Action judgment, adjudicating Plaintiff's claims would require this Court to impermissibly engage in appellate review of the Foreclosure Action. "This type of action is exactly what *Rooker–Feldman* is meant to prevent: an attempt to invalidate the final judgment of foreclosure and various other orders from a state court action in a separate federal court action." *Willoughby v. Zucker, Goldberg & Ackerman, LLC*, No. 13-7062, 2014 WL 2711177, at *4 (D.N.J. June 16, 2014).

### B. Plaintiff's Remaining Claims Are Barred by the Entire Controversy Doctrine

To the extent Plaintiff raises independent claims regarding Defendants' alleged misconduct preceding and allegedly resulting in the state-court judgment, such claims are barred by the entire controversy doctrine.

Like traditional res judicata, the entire controversy doctrine is intended to prevent piecemeal litigation by requiring the assertion of all claims arising from a single controversy in one action. *See Prevratil v. Mohr*, 678 A.2d 243, 248 (N.J. 1996). Its "purposes are to encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency . . . ." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 868 (N.J. 2002). "Generally speaking, the entire controversy doctrine requires whenever possible all phases of a legal dispute to be adjudicated in one action. At a minimum, all parties to a suit should assert all affirmative claims and defenses arising out of the underlying controversy." *Prevratil*, 678 A.2d at 246. In other words, "a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999)). In applying the doctrine, "the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." *DiTrilio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). The doctrine an "equitable principle under which the Court may exercise its judicial discretion based on the particular circumstances inherent in a given case." *In re Mullarkey*, 536 F.3d at 230 (citing *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 529–30 (N.J. 1995)).

The entire controversy doctrine applies to foreclosure proceedings, but extends only to "germane" counterclaims. *See In re Mullarkey*, 536 F.3d at 228 (citing *Leisure Tech.-Ne. v. Klingbeil Holding Co.*, 349 A.2d 96, 97 (N.J. Super. Ct. App. Div. 1975)); N.J. Ct. R. 4:64-5. In the foreclosure context, germane claims are those "arising out of the mortgage transaction which is the subject matter of the foreclosure action," *Leisure Tech.-Ne.*, 349 A.2d at 98; *see also Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011) (applying entire controversy doctrine to mortgage transaction). A claim challenging the validity of the underlying loan in a foreclosure action is considered germane and is thus subject to the entire controversy doctrine—*i.e.*, it must be brought as a counterclaim in the foreclosure action. *See Bank of N.Y. v. Ukpe*, No. 1710-09, 2009 WL 4895253 at *7 (D.N.J. Dec. 9, 2009).

Here, although the Foreclosure Action is largely the genesis of Plaintiff's Complaint, the allegations and causes of actions are couched in terms of attorney misconduct independent of the Foreclosure Action. (*See* Compl.) However, to the extent such claims are not barred by *Rooker–Feldman*, they are barred under the entire controversy doctrine.[3]

Plaintiffs' claims are germane because they clearly "aris[e] out of the mortgage transaction which is the subject matter of the foreclosure action." *Leisure Tech.*, 349 A.2d at 98. Plaintiff here is essentially arguing that the mortgage transaction, which is the subject of the foreclosure action in state court, is invalid and that Defendants acted illegally in pursuing collection under this

---

[3] The Court notes that, unlike the *Rooker–Feldman* doctrine, the entire controversy doctrine "does not defeat subject matter jurisdiction" and is therefore applied under Rule 12(b)(6), but only where its application is "apparent on the face of the complaint[.]" *See Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005). The Court finds to the extent that it has jurisdiction over Plaintiff's claims, it is apparent that the entire controversy doctrine applies based on the face of the Complaint. *Cf. Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *see also Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (concluding that Court can review the record of prior actions between the parties and take judicial notice of same in considering a motion to dismiss).

8

allegedly invalid loan. Specifically, Plaintiff alleges violations of the FDCPA and NJCFA and a RICO and civil conspiracy. (*See* Compl.) All of these claims arise from the existence of the mortgage and loan and Defendants' rights thereunder. *See DiTrilio*, 662 A.2d at 502. In other words, the validity of the mortgage ties in directly with the causes of action asserted in Plaintiff's Complaint here. Indeed, a fellow district court has found that a claim challenging the validity of the underlying loan in a foreclosure action is germane to the foreclosure action. *See Bank of N. Y.*, 2009 WL 4895253 at *7.

Moreover, Plaintiffs' claims here were undoubtedly known to Plaintiffs and had accrued at the time of the underlying action. *See Mystic Isle*, 662 A.2d at 530 (citations omitted). Even if Plaintiff did not know specifically that Defendants' collection efforts were "arguably in violation of federal and state law and court rules, at a minimum, [they were] aware" of the allegedly illegal collection efforts. *See Oliver v. Am. Home Mortgage Servicing, Inc.*, No. 09-0001, 2009 WL 4129043, at *3 (D.N.J. Nov. 19, 2009). Although Plaintiff did not appear initially, he filed a Motion to Vacate in the Foreclosure Action, in addition to commencing the independent Chancery Action. (Trainor Aff., Exs. C and H.) Thus, even though the Court is aware of "heightened concern for pro se litigants" when applying the entire controversy doctrine,[4] the Court finds that Plaintiff clearly had an opportunity to raise the claims presently before this Court in the state court proceeding. Plaintiff had "immediate recourse with the chancery judge in the foreclosure action" for issues concerning Defendants' collection efforts related to the mortgage, yet Plaintiff "failed to take that route as [they were] required to." *Id.*; *see also Sherk v. Countrywide Home Loans, Inc.*, No. 08-5969, 2009 WL 2412750, at *6 (E.D. Pa. Aug. 5, 2009) ("The time and the place to

---

[4] *In re Mullarkey*, 536 F.3d at 230 (citing *Cafferata v. Peyser*, 597 A.2d 1101, 1104, (N.J. Super. Ct. App. Div. 1991)).

challenge standing [related to the mortgage] was during the pendency of the foreclosure action or afterwards in the state court where the [plaintiffs] could have raised the issue."). Consequently, Plaintiff's claims here must be dismissed, to the extent they are not barred by *Rooker–Feldman*.

## **CONCLUSION**

For the reasons above, the Court concludes that it does not have jurisdiction over Plaintiff's Complaint. Accordingly, Plaintiff's Complaint is dismissed with prejudice. An appropriate Order accompanies this Opinion.

DATED: May 18, 2016                              s/ Jose L. Linares
                                                 JOSE L. LINARES
                                                 UNITED STATES DISTRICT JUDGE